Thank you, Your Honor. Good morning, and may it please the Court. Adam Chayes and Brian Chalk admitted students under the supervision of Peter Afresiabi and Catherine Davis on behalf of Petitioner-Appellant Lee Wren. I will open, and I request two minutes for Mr. Chalk to speak at rebuttal. You may do so. Watch the clock, Counsel, as it's counting down. Thank you. This Court should reverse the I.J. for three core reasons. First, the I.J. drafted an opinion without illustration or examples, preventing proper review. The I.J. improperly focused on corroboration and authentication. And finally, the merits of Wren's claim are so compelling that the government has conceded and waived any argument by failing to address them in their brief. Turning first to the adverse credibility finding, the immigration judge cited evasiveness, demeanor, and inconsistency as the grounds for his adverse credibility holding. Counsel, slow down a little bit. I know you've got a lot to say, but it's more effective if you slow down a little bit. Thank you, Your Honor. As brief background, I note Chanery, U.S. v. Chanery, which states that review is confined to grounds invoked by the agency. In cases such as Garavias and Lee, stating that general statements of law cannot support a finding of adverse credibility, so examples need to be stated with specificity and cogency. For each basis of adverse credibility, this wasn't done. Counsel, one of the questions I had in looking at this, it appears to me, and I want you to correct me if I'm wrong, it appears to me that in this case the government requested a remand in this case for the BIA to reconsider the merits of the claims in light of some new decisions from the BIA itself addressing the standards for assessing family planning claims. Is that a correct understanding of the record? That is an understanding of what was stated in the government's brief, yes. Okay. And is that, should we simply, without making any inquiry into the issues that you've raised, simply hold the government to that request to reconsider its own decision in light of intervening standards and law? No, Your Honor. The government refers to case, I believe, MFW, which as stated deals exclusively with the intrauterine device insertion. So you think the government shouldn't be allowed to have a remand? I don't understand your position. The statement that this should be remanded on the substance regarding the insertion of an IUD alone doesn't credit the basis of our claim, which is that the adverse credibility determination previous to any discussion of the merits isn't itself wrong, and it also disregards the remaining substance of Wren's claim. Well, if we disagree with you on that, if we were to conclude, contrary to your argument, that there is a sufficient explanation for the adverse credibility finding, what would we do with the government's request for a remand at that time? At that point, this Court does have the discretion to remand. However, I would still argue that it would be improper, given the waiver that took place regarding the remainder of Wren's harm suffered, persecution, and the substance of her claim. Ultimately, the insertion of the IUD being both the first in time and a relatively minor part of the list of persecutions that Wren suffered, ultimately the remaining amount that made it into our brief, both in opening and in reply, was simply not addressed and conceded by the government. And that is, you know, the later incarcerations and the abuses suffered therein, imprisonment without due process, in precedent cases that were remanded directly to the attorney general, such as Akinmade, a list half that long was more than enough to determine that there was no question on the merits and could be sent directly back to the agency without having to go to the lower court. Counsel, turning back to the adverse credibility finding, I note that the IJ specifically concluded that her testimony had not been consistent. She was many times evasive and not answering the questions. The opportunity, and he had the opportunity to observe her demeanor. She had memorized her testimony as far as the statement that she put before the court. All of these are specific recitals by the IJ. Why are they not adequate to support an adverse credibility determination? I would turn to a statement from Aguilera-Cota, which I believe clarifies what this Court must analyze under the substantial evidence standard. The Court does not accept blindly an IJ's conclusion that a petitioner is not credible. The record is examined to see whether substantial evidence supports the conclusion and to determine whether the reasoning employed by the IJ is fatally flawed. Well, counsel, rather than read to us from a case, handle this one. In her declaration, she says that she was arrested, detained, and put in a provincial jail. Then in her testimony, she says, no, that wasn't quite right. We were protesting the government's condemnation action of a restaurant and other businesses, and I was detained overnight at the site. Flat contradiction. True? That as a contradiction? It goes to the very subject matter of her claim of asylum because she was protesting the government and municipal corporation. True? Why isn't that sufficient? Because it didn't make its way into the immigration judge's opinion. If that was an inconsistency on which he wanted to rely, you should have stated as such. The fact that there wasn't enough detail or citation is a particularly glaring error for two core reasons. First, as stated in Singh, the immigration judge must afford the petitioner a chance to explain inconsistencies and must address those inconsistencies. She wasn't given a chance to explain the inconsistencies under Soto Olarte? The IJ asked her, you said you were in jail, you said you were detained at the construction site, which is it? On the basis of the record, I don't believe that it's enough to sustain based on inconsistencies. What more does she have to do? If that was – if there was an identification of what could be a substantial inconsistency in the evidence, the petitioner must be given a reasonable opportunity to respond, and that must make its way into the opinion. The whole basis of Chainery is that this Court had the opportunity to review the bases on which the IJ made its determination. Perhaps that was an inconsistency that the IJ purported to rely on, perhaps not. Quite frankly, it is speculation to indicate that that might be what was relied on because he didn't indicate it as much. Scalia. So when he said that the testimony has not been consistent, where did the IJ fall down? I'm not sure I understand the question. Well, the IJ specifically said that the testimony has not been consistent. That's in the record. And your argument is that he should then have identified each inconsistency, 1, 2, 3, 4, 5? Is that what you're saying? That would have been clearly sufficient. As it was noted in Hartoon v. INS, in I believe it was your dissent, Your Honor, it was evident from the IJ's recitation of Ms. Hartooni's allegations of fear and contradictory statements. It was that exact recitation that rendered that opinion sufficient in this Court's opinion that to substantiate adverse credibility, and that simply wasn't done in this case. I see that I'm running out of time. I would briefly address the corroboration argument. Now, that 1 minute and 38 seconds is for your entire side, so just keep that in mind. That being stated, Your Honor, I'll reserve the remainder of my time for rebuttal. You're very welcome. Thank you. We'll hear from the government. Good morning, Your Honor. It's Jessica Sherman on behalf of the Respondent, Eric Holder. When considering the record as a whole in this case, it does not compel a finding that Wren presented a credible claim. Her testimony was vague. It lacked detail. And it was incoherent. As the immigration judge found, it sounded as though she was reading from a rehearsed script. And when she veered off of that script, she was unable to answer questions clearly. Coupled with her complete lack of corroboration, there's nothing in the record that would compel this Court to find that she was wrong. Counsel, what's your response to opposing counsel's argument that there weren't specific references to inconsistencies and other problems? Well, the I.J. did identify specific instances in the record where there were problems. For instance, the I.J. noted that Wren appeared to confuse her 2002 and 2003 arrests. And this is clear in the record. When specifically asked about her first arrest and what happened, she started talking about how she and her co-business owners started a letter-writing campaign and were detained as a result. But those facts actually pertain to her second arrest. And so it was nonresponsive and it was evasive. In addition, this Court has recognized where the evasiveness, the incoherent responses and the lack of detail is clear on the record. The I.J. doesn't need to specify instances. It's where it's nonverbal. Is there a case that says that? Jabril v. Gonzales. Which one? Jabril v. Gonzales. Ms. Sherman, what is your thought about the issue that I raised with the opposing counsel? That is, the government, knowing everything that's in this record, nonetheless requested a remand to the BIA to reconsider her claims in light of MFW and LG, which are a 2008 BIA, or it's maybe one decision about two people, rather. Why shouldn't we hold the government to that request? Well, the adverse credibility in this case is dispositive. And if the Court agrees that the record does not compel a finding that she was credible, it doesn't need to reach the merits. Well, let me ask you this. Did that request for a remand come before or after the BIA issued its opinion in this case, the final order that's under review? It was after. It was a 2006 BIA decision and these are 2008 cases. Okay. Well, isn't that a form of waiver of standing upon the ground that the BIA arrested its holding? In other words, in 2008 you had a BIA decision affirming an IJ decision saying this person's not credible, therefore she loses. Then, notwithstanding that, you asked to send the case back to the BIA for reconsideration. So why doesn't that trump your previous reliance? Well, our request was simply on the basis that the Court could not uphold the adverse credibility determination. The Board would need to relook at the merits in light of MFW, which set forth a new standard for assessing past persecution claims based on family planning violations. Was this a conditional request? Yeah, a conditional request that if the adverse credibility determination was found not to be upheld by substantial evidence, then the merits themselves would need to be revisited. And not just the family planning claim, but also the protest claim, because the Court and the Board are required to consider past persecution and the cumulative effect. And so the fact that the Board's analysis on the family planning claim is based on outdated case law, it would need to look at that, with regard to the arrest. So if I understand your position correctly, it is it was not a waiver, it was always conditional, therefore you still get to rely on the primary argument that there was no credible testimony. Yes, Your Honor. Just as if the Board had only rested on credibility grounds and this Court overturned that, it would still go back to the agency to determine on the merits in the first instance. And so we would argue that if the credibility grounds don't stand, then the Board should be given an opportunity to reassess its position in light of intervening case law. Anything further? I just want to point out that, again, Ms. Wren's evasiveness was clear on the record. Various times she was asked to repeat herself, particularly on cross-examination. While she could answer her attorneys on direct examination, on cross-examination she had difficulty. And this goes to the immigration judge's point that when she was asked to veer off the script, she was unable to do so. And this gave the immigration judge ample reason to request corroboration, and Ms. Wren failed to present almost any corroboration whatsoever. She was on notice that she was required to do so after her asylum interview, and she never requested a continuance from the immigration court to obtain documentary evidence. She was given an opportunity to be questioned about the evidence that was lacking, most of which she said she didn't know that she needed to obtain. Either she was unable to obtain because it didn't exist, or that she had left such documentation in China. So essentially she made corroboration of her claims impossible, and she never requested it. To fault someone for not bringing in corroborative evidence, it has to be readily available.  It has to be readily available to someone who has come here. Well, she testified that she had family still in China. Both of her ex-husband and her husband, her two children, her sister. That doesn't make the documentation readily available. I mean, this is not like you can just sign a piece of paper the way we do here and get your medical records necessarily. I mean, it may be much harder than that. But even if that's true with regard to the medical evidence, she didn't submit a single affidavit from any family member, from anyone that she worked with, from anyone that she wrote these petitions with. I mean, there's a complete dearth of evidence. And she bears the burden of proof before the immigration court. And given her vague and inconsistent and incoherent testimony, it was reasonable for the immigration judge to require some sort of corroboration of her claims. And although the immigration judge didn't specifically point out every inconsistency in the record, those inconsistencies go to whether a petitioner can carry her burden of proof today of showing that the record compels a finding that she's credible. And with a record that's full of inconsistencies, she has not met that burden of showing that this record compels a finding she was credible. Accordingly, we ask the court to deny the petition for review. Thank you, counsel. Thank you very much. Mr. Chalk or Mr. Shays? Who will do the rebuttal? I will. Mr. Chalk. Please come forward. Thank you, Your Honor. May I begin? Yes, you may, certainly. Thank you. Your Honor, the government frequently... For the record, please introduce yourself. Thank you. Brian Chalk for the petitioner. The government frequently referenced patent inconsistencies, which we would suggest are not on the record. If you are confused about something, that doesn't make you inconsistent. You're seeking clarification. In Tercio, this Court specifically found that the petitioner was attempting to explain, and I think that is true here. Here, Wren experienced two arrests, yes, but the second was a serious arrest with multiple detentions and torture. And quite a more substantial experience than a simple overnight detention, which was her first arrest. For her to try to clarify doesn't amount to inconsistency. Secondly, the I.J. does have to specify, with specificity, the basis of his or her decision. In this case, that did not happen. We are asked to ponder what the I.J. was thinking about, and we would again cite to Lei Lee on that point. Finally, the I.J. may not require corroboration. The I.J. cited a lack of corroborating evidence no less than 21 times in this opinion. It clearly infected the entire decision in terms of where he was coming from, and that's simply not what the law in this circuit stands for. And I think if we look at Carapeletan, we see a very powerful situation. Thank you, Your Honor. Thank you very much, Counsel. The case just argued will be submitted for decision. And on behalf of the panel, I would like to express our appreciation to the University of California at Irvine School of Law for fine representation on a pro bono basis. We appreciate your willingness to take this case. Thank you very much.
judges: O'scannlain, Graber, Bea